IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

RICHARD HAND,                      *
                                   *
        Plaintiff,                 *
                                   *
        v.                         *          CV 112-176
                                   *
ABN AMRO MORTGAGE GROUP, INC.;     *
LASALLE BANK, N.A.; CENLAR         *
FEDERAL SAVINGS BANK; and          *
CITIMORTGAGE, INC.,                *
                                   *
        Defendants.                *

_____

**O R D E R**

_____

Presently pending before the Court are Defendants' motions for judgment on the pleadings.  (Doc. nos. 5, 22.)  Upon due consideration, these motions are **DENIED.**

## I.  BACKGROUND

This case arises out of the administration and servicing of Plaintiff's mortgage loan.  On or about December 31, 2002, Plaintiff signed a Promissory Note and Security Deed giving Southern Mortgage Lending Group, Inc. a security interest in his home located at 3928 Mike Padgett Highway in Augusta, Georgia ("the Property").  (Compl. ¶ 7 & Ex. A.)  In February 2003, ABN AMRO Mortgage Group, Inc. ("ABN") began servicing Plaintiff's mortgage.[1]  (Id. ¶ 10.)  In late 2003 and early 2004, Plaintiff

_____

[1] ABN merged into CitiMortgage, Inc. ("CMI"), and CMI was officially substituted for ABN while this case was pending in the Superior Court of Richmond County.  (Doc. no. 1, Ex. 3 at 119, 126.)

began receiving notices from ABN regarding forced-placed insurance, delinquency, collection efforts, and possible foreclosure. (Id. ¶¶ 17-33, 36, 39-42.) Plaintiff disputed ABN's billing practices and maintained that his account was current. (Id. ¶¶ 29, 34-35, 37.)

On April 2, 2004, Plaintiff and his wife filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Southern District of Georgia. See In Re Hand, No. 04-11178 (Bankr. S.D. Ga.). ABN filed proof of a secured claim in the amount of $73,004.12. Pursuant to the Chapter 13 plan, Plaintiff was to make regular post-petition payments directly to ABN as they became due, and any pre-petition arrearages would be cured through payments to the Chapter 13 Trustee. (Bankr. doc. no. 10.) On September 9, 2004, the plan was confirmed, though Plaintiff reserved the right to object to ABN's claim. (Bankr. doc. nos. 21, 22.) Plaintiff filed an objection to ABN's pre-petition arrearage claim, arguing that it should be disallowed in its entirety. (Bankr. doc. no. 24.) On January 28, 2005, the Bankruptcy Court entered a consent order reducing the arrearage claim from $4,529.35 to $1,428.95. (Bankr. doc. no. 34.) On June 1, 2007, after successful completion of the plan, Plaintiff was granted a discharge pursuant to 11 U.S.C. § 1328(a). (Bankr. doc. no. 82.) On July 1, 2007, ABN assigned the servicing rights to

Plaintiff's mortgage loan to LaSalle Bank, N.A. ("LaSalle").[2] (Compl. ¶ 114.)

In January 2008, the bankruptcy case was closed. (Bankr. doc. no. 85.) However, in June 2008, Plaintiff filed a motion to reopen the bankruptcy case, which was granted. (Bankr. doc. nos. 86, 88.) Plaintiff then initiated an adversary proceeding against ABN, LaSalle, and Cenlar. Hand v. ABN AMRO Mortgage Group, Inc. (In Re Hand), No. 08-01023 (Bankr. S.D. Ga.). The Adversary Complaint was "voluminous and confusing," but counsel clarified the purported causes of action at a hearing. (Bankr. Adv. doc. no. 23 at 4.) The Adversary Complaint raised six bankruptcy-specific causes of action, as well as claims for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), O.C.G.A. § 13-1-11, breach of contract, and conversion. (Id. at 4, 28.) On March 26, 2009, the Bankruptcy Court dismissed all the causes of action arising under the Bankruptcy Code. (Id. at 7-28.) In doing so, the Bankruptcy Court determined that allegations relating to pre-petition and pre-confirmation conduct were barred by the doctrine of res judicata. (See id. at 8-12.) Regarding the non-bankruptcy causes of action, the Bankruptcy Court found that it lacked jurisdiction to rule on those claims. (Id. at 28-30.)

---

[2] Bank of America, N.A. ("BANA") succeeded LaSalle's interest through merger. (Doc. no. 5 at 1 n.1.) Cenlar Federal Savings Bank ("Cenlar") serviced the mortgage during BANA's ownership of the Promissory Note and Security Deed. (Compl. ¶ 6.)

On March 16, 2010, Plaintiff filed a complaint in the Superior Court of Richmond County against the same Defendants from the Adversary Proceeding: ABN, LaSalle, and Cenlar. (Doc. no. 1, Ex. 1.) The Complaint sets forth a plethora of detailed allegations, including 179 individually numbered paragraphs and over 70 exhibits, totaling 261 pages.[3] Stated broadly, Plaintiff claims that Defendants improperly force-placed insurance, charged him unauthorized fees and expenses, misapplied payments, and failed to credit payments in connection with the mortgage loan. Due to the highly disorganized nature of the Complaint, it is difficult to provide a more thorough summary of the allegations. It is also difficult to determine which causes of actions have been raised, as they have not been set forth in separate counts. The causes of action, instead, are lumped together in a haphazard, confusing array of legal conclusions and factual allegations under the heading "Causes of Action." (See Compl. ¶¶ 144-79.) In briefing Defendants' motions for judgment on the pleadings, Plaintiff contends that the Complaint raises the following claims: breach of contract, conversion, violation of RESPA, violation of O.C.G.A. § 13-1-11, and violation of O.C.G.A. § 7-14-17.

On April 23, 2010, Cenlar filed its Answer in Superior Court. (Doc. no. 1, Ex. 3 at 41.) On November 22, 2011, BANA, as

---

[3] Notably, the Complaint is almost identical to the Adversary Complaint filed in the bankruptcy proceeding. (Compare Bankr. Adv. doc. no. 1.) BANA and Cenlar contend that the Complaint is an "exact replica" of the Adversary Complaint. (Doc. no. 5, Ex. 1 at 3.) Significant portions of the complaints are identical, but they are not completely duplicative.

4

successor to LaSalle, filed its Answer in Superior Court. (Id. at 83.) On December 29, 2011, CMI, as successor to ABN, filed a motion to dismiss in Superior Court. (Id. at 93.) On November 21, 2012, CMI removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441. (Doc. no. 1.) On November 28, 2012, BANA and Cenlar filed a joint motion to dismiss.[4] (Doc. no. 5.) Discovery was partially stayed pending resolution of this motion to dismiss. (Doc. no. 19.) On April 24, 2013, CMI filed a motion for judgment on the pleadings. (Doc. no. 22.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same. Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the

---

[4] Plaintiff contends that BANA and Cenlar's motion to dismiss was untimely because it was filed after their responsive pleadings were filed contrary to Federal Rule of Civil Procedure 12(b), which requires that 12(b)(6) motions be made before any responsive pleading. (Doc. no. 10 at 2.) BANA and Cenlar argue that their Answers complied with Georgia procedural rules and preserved their defense that Plaintiff failed to state a claim. (Doc. no. 11 at 2 n.2.)

Failure to submit a Rule 12(b)(6) motion before pleading is not necessarily fatal. A defendant retains the right to raise the defense of failure to state a claim by filing a motion for judgment on the pleadings, pursuant to Rule 12(c), after the pleadings are closed but early enough not to delay trial. Stevens v. Showalter, 458 B.R. 852, 856 (D. Md. 2011) (citing Fed. R. Civ. P. 12(h)(2)(B)). Thus, many courts have concluded that an untimely Rule 12(b)(6) motion may be construed as a Rule 12(c) motion for judgment on the pleadings. Id.; see, e.g., In re Brown, 457 B.R. 919, 924 (Bankr. M.D. Ga. 2011) (concluding that the defense of failure to state a claim is not waivable and Rule 12(b)(6) motions "filed after the pleadings are closed 'will be treated as a motion for judgment on the pleadings based on a failure to state a claim on which relief may be granted'" (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). Accordingly, the Court will construe BANA and Cenlar's motion to dismiss as a motion for judgment on the pleadings.

same standard as is a Rule 12(b)(6) motion to dismiss.")   A motion for judgment on the pleadings, like a motion to dismiss, tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits.   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).   The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff.   See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).   The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts.   Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   Id.

## III. DISCUSSION

### A. Shotgun Pleading

#### 1. Arguments

BANA and Cenlar argue that the Complaint is a "shotgun pleading" consisting of unorganized paragraphs of often rambling and incomprehensible allegations. They contend that this warrants dismissal with prejudice. (Doc. no. 5, Ex. 1 at 10-12.) In response, Plaintiff argues that if the Complaint is confusing or incomprehensible, it is because Defendants' correspondence and accounting procedures do not make sense. (Doc. no. 10 at 6, 8-9.) The Court generally agrees with BANA and Cenlar that the Complaint constitutes a shotgun pleading, but concludes that proper remedy is to order repleading, as opposed to dismissing the case with prejudice.

#### 2. Standard

The typical shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). This leads to a situation where most of the counts "contain irrelevant factual allegations and legal conclusions." Id. The underlying problem is that the shotgun complaint "fails to link adequately a cause of action to its factual predicates." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006); see also Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.,

77 F.3d 364, 366 (11th Cir. 1996) ("[Plaintiff's] complaint is a
perfect example of 'shotgun' pleading in that it is virtually
impossible to know which allegations of fact are intended to
support which claim(s) for relief." (internal citation omitted));
Pelletier v. Zweifel, 921 F.2d 1465, 1517-18 (11th Cir. 1991)
(describing "quintessential shotgun pleadings" replete with
"rambling recitations" and "factual allegations that could not
possibly be material" that force the "district court [to] sift
through the facts presented and decide for [itself] which were
material to the particular cause of action asserted"); Bates v.
Laminack, No. 2:12-CV-387, 2013 WL 1345193, at *17 (S.D. Tex. Apr.
1, 2013) ("What makes a pleading a 'shotgun' pleading is the
inclusion of irrelevant and unrelated facts not tied to specific
causes of action such that the claims made are indeterminate and
the defendant's task in defending against them is significantly
impaired.").

In conjunction with failing to link causes of action to their
factual predicates, another common problem found in shotgun
pleadings is failing to organize the various claims as separate
counts. Rule 8(a)(2) requires "a short and plain statement of the
claim," and Rule 10(b) instructs that, "[i]f doing so would
promote clarity, each claim founded on a separate transaction or
occurrence . . . must be stated in a separate count or defense."
Fed. R. Civ. P. 8(a)(2), 10(b) (emphasis added).

8

These rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 980 n.57 (11th Cir. 2008) (quoting Fikes v. City of Daphne, 79 F.3d 1079, 1082-83 (11th Cir. 1996)); see also id. at 979-80 (stating that the framers of the Federal Rules of Civil Procedure would "roll over in their graves" upon reading a complaint containing "untold causes of action, all bunched together in one count" contrary to Rule 10(b)); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (vacating judgment and remanding for repleading where shotgun complaint "buried" material allegations "beneath innumerable pages of rambling irrelevancies" in complete disregard of Rule 10(b)).

Additionally, shotgun complaints "often fail to specify which claims are brought against which defendants." Skyventure Orlando, LLC v. Skyventure Mgmt., LLC, No. 6:09-CV-396, 2009 WL 2496553, at *6 (M.D. Fla. Aug. 12, 2009) (citing Magluta, 256 F.3d at 1284). In such a case, the Eleventh Circuit held that a trial court properly ordered plaintiff to amend her complaint to specify which of her claims were against which defendants and to segregate the relevant facts to each claim. See Beckwith v. Bellsouth Telecomms. Inc., 146 Fed. Appx. 368, 372 (11th Cir. 2005).

The Eleventh Circuit "has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."[5] Strategic Income Fund, LLC, 305 F.3d at 1296 n.9. "[S]hotgun pleadings wreak havoc on the judicial system." Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001). There are many unacceptable consequences of shotgun pleading. First, shotgun pleadings "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." Wagner, 464 F.3d at 1279. Shotgun pleadings, if tolerated, require trial courts to sift through the facts presented, decide for itself which allegations are material to the particular causes of action asserted (many of which may be foreclosed by defenses), and sift out the irrelevancies - "a task that can be quite onerous." Strategic Income Fund, LLC, 305 F.3d at 1295 & nn. 9-10 (citations omitted); see also Byrne, 261 F.3d at 1131 ("The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard."). In addition to wasting trial court resources, shotgun pleadings waste attorneys' and litigants' resources, inexorably broaden the scope of discovery, wrongfully extort settlements, wreak havoc on appellate court dockets, and undermine the public's respect for the courts. See Davis, 516 F.3d at 981-83; Anderson, 77 F.3d at 367.

---

[5] Indeed, since 1985 the Eleventh Circuit has "explicitly condemned shotgun pleadings upward of fifty times." Davis, 516 F.3d at 980 n.54.

### 3. *Analysis*

Although the Complaint is detailed in some respects, it is so highly disorganized that untangling and deciphering the allegations is an unmanageable task. Though the Complaint does not incorporate allegations of prior claims into subsequent claims as in a typical shotgun complaint, it exhibits some of the even more severe symptoms of shotgun pleading.[6] Contrary to Rule 10(b), the Complaint does not set forth each cause of action in a separate count. See Davis, 516 F.3d 955, 980 & n.57; Magluta, 256 F.3d at 1284. Instead, the Complaint chaotically sets forth legal conclusions and factual allegations in a single section entitled "Causes of Action." (See Compl. ¶¶ 144-79.) As in Davis, 516 F.3d at 980, untold causes of action are "bunched together in one count." It is not even clear what causes of action have been raised in this case.[7] Additionally, the Complaint fails to clearly specify which claims are brought against which Defendants. See Beckwith, 146 Fed. Appx. at 372; Skyventure Orlando, LLC, 2009 WL 2496553, at *6.

Most importantly, the Complaint fails to adequately link the causes of action to their factual predicates. In Wagner, 464 F.3d at 1279, "[t]he central problem [was] that the factual

---

[6] To incorporate by reference, the claims would have to be organized into separate counts. Here the claims are jumbled together in one section without any perceptible attempt at organization.

[7] For example, in briefing the motions for judgment on the pleadings, the parties bicker whether the Complaint sets forth a cause of action for violation of O.C.G.A. § 7-14-17.

particularity of the first 175 paragraphs [was] not connected to the otherwise generally pled claim in any meaningful way." This case is strikingly similar. "[T]he problem [is] not that [Plaintiff] did not allege enough facts, or failed to recite magic words; the problem [is] that while [Plaintiff] introduce[s] a great deal of factual allegations, the [Complaint does] not clearly link any of those facts to its causes of action." Id. at 1280. Further, a proper complaint should not only link facts to causes of action; it should link specific facts to each of the *elements* of the claims asserted. Id. at 1279. In this regard, the Complaint completely misses the target.

Faced with these critical deficiencies, the Court refuses to sift through the Complaint's 179 paragraphs and 70 exhibits, hunting and pecking for allegations that could be material to each cause of action. In briefing the motions for judgment on the pleadings, the parties attempt to gather the Complaint's scattershot allegations and create order from the chaos. However, the scope and nature of Plaintiff's claims, as well as their factual predicates, are still in disarray. Moreover, it is well-established that a complaint may not be amended by a brief in opposition to a motion to dismiss. Walker v. SunTrust Bank of Thomasville, Ga., No. 7:07-CV-173, 2008 WL 4004714, at *3 n.1 (M.D. Ga. Aug. 26, 2008).

Plaintiff argues that the Complaint is not a shotgun pleading because Defendants addressed his claims in their Answers and

12

motions for judgment on the pleadings. (Doc. no. 10 at 8.) However, the fact that Defendants attempted to respond to the Complaint does not negate the fact that it is a shotgun pleading. See Davis, 516 F.3d at 983-84 ("[D]efense counsel, faced with a complaint purporting to combine in one count multiple claims of eight plaintiffs, should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e)," rather than filing a responsive answer.); Anderson, 77 F.3d at 367 (criticizing defendants for filing answer instead of moving for more definite statement); Byrne, 261 F.3d at 1129 ("By eschewing a Rule 12(e) motion for a more definite statement and choosing to answer the amended complaint in this fashion, the defendants in effect joined the plaintiff in setting the stage for the immense and unnecessary expenditure of resources evident in this case.").

### 4. Remedy

Though the Complaint is a shotgun complaint, the case should not be dismissed with prejudice, as urged by BANA and Cenlar. The proper remedy is to order repleading. Wagner, 464 F.3d at 1280. District courts have a "supervisory obligation to sua sponte order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates." Id. at 1275; see also Byrne, 261 F.3d at 1133 ("As we have stated on several occasions over the past twelve years, if, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement,

13

the court, in the exercise of its inherent power, must intervene *sua sponte* and order a repleader."); Davis, 516 F.3d at 984 (same).

Indeed, failure to order repleading may constitute reversible error. See, e.g., Wagner, 464 F.3d at 1280 ("We disagree with the dismissal of this case because these observations sound more clearly in Rule 12(e)'s remedy of ordering repleading for a more definite statement of the claim, rather than in Rule 12(b)(6)'s remedy of dismissal for failure to state a claim," at least where there was "no repeated failure . . . to draft a conforming complaint."); Magluta, 256 F.3d at 1284 ("In the past when faced with [shotgun] complaints like this one, we have vacated judgments and remanded with instructions that the district court require plaintiffs to replead their claims.  That is the appropriate disposition here." (citations omitted)).

### 5. *Repleading Instructions*

In filing an Amended Complaint, Plaintiff **must not** file another shotgun complaint.  The Amended Complaint should set forth each cause of action in a separate count and clearly specify which causes of action apply to which Defendants.  Within each separate count, Plaintiff should allege factual support for every cause of action asserted, and, more specifically, *for each element* of the causes of action.  Plaintiff must not rely on legal conclusions unconnected to the factual predicates of his claims and should avoid incorporating factual allegations by reference.  In short,

14

Plaintiff must spend time organizing the allegations before filing the Amended Complaint. Also, Plaintiff should make sure the Amended Complaint's exhibits are organized and clearly labeled.[8]

Implicit in any court's order to replead "is the notion that if the plaintiff fails to comply with the court's order — by filing a repleader with the same deficiency — the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." Byrne, 261 F.3d at 1133. Here, the Court makes this notion very explicit. Before filing the Amended Complaint, Plaintiff should be careful to comply with the Court's instructions. Additionally, Plaintiff's counsel must fulfill her obligations under Rule 11(b) and assure that the claims are warranted by the law and have evidentiary support. See Fed. R. Civ. P. 11(b); see also Byrne, 261 F.3d at 1133 n.113 (District court should strike complaint and instruct counsel to replead "if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)."[9] (emphasis added)). Observing these guidelines should curtail the need for "satellite litigation under Rule 11, 28 U.S.C. § 1927, or the court's inherent power," and minimize counsel's and client's "exposure to a criminal contempt citation"[10] and "post-litigation

---

[8] As filed on the docket, many labels on the Complaint's exhibits have been partially or completely cut off along the bottom margin of the document.

[9] Therefore, Plaintiff may choose to not replead certain claims if they are not sufficiently supported by fact or law.

[10] "If use of an abusive tactic [like shotgun pleadings] is deliberate and actually impedes the orderly litigation of the case, to wit: obstructs justice,

tort actions for abuse of process or malicious prosecution." Id. at 1133.

In the subsequent sections, the Court will make more specific observations regarding the Complaint's allegations and issues raised in the motions for judgment on the pleadings and responses thereto. Due to the overall structural deficiencies of the Complaint, the Court cannot express a definitive opinion on the merits of the claims asserted.[11] See Wagner, 464 F.3d at 1279-80. However, by addressing specific deficiencies at this time, it may help the parties to avoid committing the same mistakes again during repleading. This will hopefully narrow the issues and promote judicial efficiency over the course of this case.[12] See Chapman v. AI Transp., 229 F.3d 1012, 1027 (11th Cir. 2000) (urging district courts "to take a firm hand and whittle cases down to the few triable claims" in cases with shotgun pleadings).

**B. Res Judicata**

One issue raised by BANA and Cenlar is whether Plaintiff's claims are barred by (1) the Bankruptcy Court's January 28, 2005 Order on Plaintiff's objection to ABN's arrearage claims (bankr.

---

the perpetrator could be cited for criminal contempt." Id. at 1131-32 (footnotes omitted).

[11] The Court stresses that the observations in the following sections are not final adjudications on the merits, and the Court will evaluate the Amended Complaint as it stands by itself, if and when appropriate.

[12] The Court does not address all of the issues raised in the motions for judgment on the pleadings and responses thereto. Instead, the Court focuses on specific pleading deficiencies and aspects of the case which have the potential to significantly narrow the issues. Some of the issues raised simply require better pleading (and briefing) before the Court can even attempt to determine the legal sufficiency of the claims asserted.

doc. no. 34), or (2) the Bankruptcy Court's March 26, 2009 Order granting ABN, LaSalle, and Cenlar's motion to dismiss Plaintiff's Adversary Complaint (bankr. adv. doc. no. 23).

"Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001).   Claim preclusion may be properly applied only if the following prerequisites are met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."[13]   Id.   "The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." Id.   At all times, the burden is on the party asserting res judicata (here, Defendants) to show that the later-filed suit is barred.   Id.

The Bankruptcy Court's March 26, 2009 Order in the adversary proceeding declined to rule on Plaintiff's non-bankruptcy claims (i.e. the same claims raised in the present case) for lack of jurisdiction. (See Bankr. Adv. doc. no. 23 at 28-30.)   Thus, that Order cannot represent a final judgment on the merits by a court

---

[13] Claims are part of the same cause of action for claim preclusion purposes when they arise out of "the same transaction or series of transactions" or "the same nucleus of operative fact." Id. at 1296-97.

of competent jurisdiction, and the first two elements of claim preclusion have not been met.

However, the Bankruptcy Court's January 28, 2005 Order resolving Plaintiff's objection to ABN's pre-petition and pre-confirmation arrearage claims appears to meet all the claim prelusion elements. (See Bankr. doc. no. 34.) First, the Order was entered by a court of competent jurisdiction. Second, the Order represents a final judgment on the merits of Plaintiff's objection to ABN's arrearage claims. Cf. In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990) ("[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as any district court's final judgment on the merits."); In re Morton, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003) (holding that bankruptcy court's order overruling debtor's objections to claims was a final order). Third, this case involves the same parties as those in the bankruptcy action (Plaintiff and ABN), as well as ABN's privies (CMI, BANA, and Cenlar). Fourth, both cases involve the same cause of action (as they arise out of "the same transaction or series of transactions") to the extent that the claims in this action address pre-confirmation arrearages and conduct by Defendants.[14]

---

[14] The Bankruptcy Court made a similar determination during the adversary proceeding. In ruling on the bankruptcy causes of action, the Bankruptcy Court stated:

> Any issue regarding the pre-confirmation allocation of payments could have been, and should have been, addressed at the hearing on the objection to the claim. In [this adversary proceeding], Debtors [including Plaintiff] filed an objection to claim, asserting they

Thus, in this action, any claim predicated on pre-confirmation conduct by Defendants is precluded because it "was or could have been raised" by Plaintiff when objecting to ABN's claim in the bankruptcy proceeding.

As BANA and Cenlar rightly point out, Plaintiff makes no meaningful attempt in his Complaint to distinguish between Defendants' pre-confirmation and post-confirmation conduct. At least some of the claims in the "Causes of Action" section appear to be predicated on Defendants' conduct before the September 9, 2004 confirmation. (See, e.g., Compl. ¶¶ 147-50.) In repleading, Plaintiff should avoid relying on pre-confirmation conduct as the factual predicates for the claims asserted.[15]

BANA and Cenlar also raise a collateral estoppel defense in their motion to dismiss. However, unlike claim preclusion, collateral estoppel requires that an identical issue have been actually litigated and decided in a prior proceeding by the same parties or their privies. See U.S. v. Weiss, 467 F.3d 1300, 1308 (11th Cir. 2006). As the Bankruptcy Court never actually

---

were not liable for an arrearage claim. A hearing was set and the parties entered into a consent order whereby the Debtors acknowledged an arrearage of $1,428.95. As such, the issue of pre-confirmation arrearage was addressed and resolved by this previous court order and cannot be relitigated now.

(Bankr. Adv. doc. no. 23 at 9 (citations omitted)); see also id. at 10-11 (noting that ABN's proof of claim itemized pre-petition and pre-confirmation expenses relating to Plaintiff's mortgage loan).

[15] Plaintiff may, of course, provide a factual and procedural background that encompasses pre-confirmation conduct, but the claims themselves should be predicated on post-confirmation conduct to avoid claim preclusion issues.

litigated and decided the legal sufficiency of Plaintiff's non-bankruptcy causes of action, collateral estoppel is inapplicable.

**C. Breach of Contract**

The elements for a breach of contract claim in Georgia[16] are (1) breach and (2) resultant damages (3) to a party who has the right to complain about the contract being broken. Duke Galish, LLC v. Manton, 308 Ga. App. 316, 320 (2011). The plaintiff must identify the "specific contractual provision which was allegedly breached." Holloway Constr. Co. v. Dep't of Transp., 218 Ga. App. 243, 246 (1995).

Having reviewed the Complaint and the parties' briefing on the motions for judgment on the pleadings, it is apparent that Plaintiff, Defendants, and the Court have arrived at divergent conclusions as to which of the Complaint's paragraphs relate to the breach of contract claim. Further, there is a great deal of confusion as to which provisions of the contract have allegedly been breached. To avoid repetition of this predicament, the Amended Complaint must be better organized and more clear.

The Complaint, in part, alleges that Defendants breached the contract by charging Plaintiff unauthorized fees and expenses, such as attorney's fees in connection with the bankruptcy proceeding and property inspection fees. (See Compl. ¶¶ 144, 157-58, 163-64, 170-74.) Plaintiff merely identifies various charges

---

[16] The contract at issue, the Security Deed, is governed by Georgia law. (See Compl., Ex. A ¶ 14.)

and brazenly asserts that these charges are in violation of the contract. This manner of pleading is unacceptably conclusory. In the Amended Complaint, Plaintiff should – if permitted by Rule 11 – articulate how these charges constitute a breach of the contract. Plaintiff should consider whether the terms of the Security Deed contradict Plaintiff's allegations. For example:

> If Borrower [fails to make certain payments, breaches the agreement,] or there is a legal proceeding that may significantly affect Lender's rights in the Property (*such as a proceeding in bankruptcy . . .*), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property . . . . Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

(Compl., Ex. A ¶ 7 (emphasis added)). According to this term, the Security Deed expressly allows Defendants to charge Plaintiff fees in order to protect their interests in a bankruptcy action.

The Complaint also alleges that Defendants failed to credit payments and misapplied payments made by Plaintiff. (See Compl. ¶¶ 148-55, 178-79.) In response to the motions for judgment on the pleadings, Plaintiff argues that these allegations support a breach of contract claim. (See Doc. no. 10 at 10-11; Doc. no. 23 at 7, 10.) The Security Deed provides that the Lender shall apply payments in the following order: (1) to mortgage insurance premiums, (2) to any taxes, special assessments, leasehold payments, ground rents, or hazard insurance, (3) to interest due

under the Note, (4) to principal of the Note, and (5) to late charges under the Note. (Compl., Ex. A. ¶ 3.) At no point in the Complaint or in briefing the motions for judgment on the pleadings has Plaintiff adequately explained how Defendants' application of payments breached this provision or other provisions of the Security Deed.

Plaintiff also argues that Defendants breached the contract by charging Plaintiff for force-placed insurance. (Doc. no. 23 at 8-9.) The Complaint contains numerous references to forced-placed insurance but these allegations are not found in the "Causes of Action" section and are not presented in conjunction with any of the applicable contractual terms. (See Compl. ¶¶ 23, 52-54, 69-70, 84-92, 100-01, 104, 113.) Under the terms of the Security Deed, the Lender is permitted to pay for hazard insurance and charge Plaintiff for the hazard insurance if Plaintiff did not carry hazard insurance approved by the Lender. (See id., Ex. A ¶¶ 2, 4, 7.) Plaintiff alleges that ABN sent numerous notices that it would be force-placing insurance and that it had force-placed insurance. (See id. ¶¶ 69-70, 84-86, 88-89, 100-01, 113.) Many of the notices ask Plaintiff to send proof of coverage to ABN. (See id.) Plaintiff does allege that he carried his own hazard insurance for one year. (See id. ¶ 90.) However, Plaintiff never alleges that he notified ABN about this insurance policy or that the insurance policy and provider were approved by ABN as required

by the Security Deed.   (See id., Ex. A ¶ 4.)   As a result, the force-placed insurance allegations are critically deficient.

Though not relied upon by Plaintiff in briefing the motions for judgment on the pleadings, there are two paragraphs in the "Causes of Action" section of the Complaint which actually refer to specific provisions of the Security Deed.   First, Plaintiff alleges: "Contrary to the requirements of the Security Deed page two paragraph three, no notice of delinquency was issued by defendants to plaintiff."   (Id. ¶ 166.)   Second, "Plaintiff was never asked to sign a supplemental note as referenced in the Security Deed page two number four."   (Id. ¶ 167.)   However, the pages and paragraphs cited contain no reference to a notice of delinquency or supplemental note.

In summary, many of Plaintiff's breach of contract allegations are conclusory and appear to be foreclosed by the actual terms of the Security Deed.   Yet, given the discombobulated state of the initial Complaint, it is impossible to unravel which allegations support this claim and tie those allegations to their factual predicates.   The Court will not tolerate such sloppy pleading in the Amended Complaint.

**D. Conversion**

Conversion involves an "unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to her rights." Habel v. Tavormina, 266 Ga. App. 613, 615 (2004).   "If [the defendant] has a right to assert

23

ownership, the act of dominion is not wrongful and does not constitute conversion." Id. When someone comes into lawful possession of the disputed property, there is no unauthorized exercise of dominion and thus no conversion "in the absence of a demand for its return and a refusal to return the personal property." Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1372 (N.D. Ga. 2004) (citing McDaniel v. White, 140 Ga. App. 118 (1976)); see also Williams v. Nat'l Auto Sales, Inc., 287 Ga. App. 283, 285 (2007) ("Demand and refusal is necessary only when the defendant comes into possession of the property lawfully. What is meant by defendant coming *lawfully* into possession of the property is, where he finds it, and retains it for the true owner, or where he obtains the possession of the property, by the *permission or consent of* the plaintiff." (emphasis in original)).

According to the allegations here, Defendants initially came into possession of Plaintiff's check payments lawfully. Therefore, Plaintiff must allege and eventually prove the following elements: (1) ownership or title in the plaintiff to the disputed property, or the plaintiff's right to immediate possession of the property; (2) actual possession of the property by the defendant; (3) demand by the plaintiff for the return of the property; (4) the defendant's refusal to return the property; and (5) the value of the property. Eleison Composites, LLC v. Wachovia Bank, N.A., 267 Fed. Appx. 918, 923 (11th Cir. 2008).

Plaintiff's claims for conversion are premised on (1) misapplication of payments to charges for unauthorized fees and expenses; (2) misapplication of payments to a "suspense" account; and (3) failure to credit payments. (See Compl. ¶¶ 148-55, 157-59, 168-69, 177.) Regarding the misapplication of payments, the Court explained in Section III.C. that the Security Deed expressly allows Defendants to charge Plaintiff fees to protect their interests in bankruptcy, and the Complaint's allegations do not adequately explain how Defendants' application of payments were contrary to the Security Deed. Thus, when applied to the conversion claim, Plaintiff has not sufficiently alleged the first element: ownership or right to immediate possession of the disputed property.[17] Regarding the failure to credit payments, the allegations are more straightforward, but Plaintiff still needs to isolate and present specific instances of Defendants' failure to credit payments and properly tie the facts to each element of the conversion claims.

Both motions for judgment on the pleadings call attention to Plaintiff's failure to plead the third element: demand for the return of the property. In response, Plaintiff argues that "Hand has documented numerous attempts to have his payments properly

---

[17] In responding to BANA and Cenlar's motion for judgment on the pleadings, Plaintiff states: "Hand has attached sufficient documents to the complaint to prove that unauthorized fees and expenses were assessed to his account. . . . When taken as true, these allegations will state a claim for conversion." (Doc. no. 10 at 13.) It is not the Court's duty to sift through over two hundred pages of exhibits and build Plaintiff's case for him. The Complaint must clearly link factual allegations to each element of each claim as applied to each Defendant.

applied to his account – the biggest of which was the Adversary [Complaint] filed in Bankruptcy Court." (Doc. no. 23 at 14-15.) Again, the Court will not sift through the Complaint's 70 exhibits searching for some evidence of Plaintiff's demand on Defendants. As to the Adversary Complaint, Plaintiff has identified no authority that the Adversary Complaint satisfies the demand element.[18]

CMI argues that Plaintiff's conversion claims are improper because money cannot be the subject of a civil action for conversion, unless the allegedly converted money is a specific, identifiable fund. (Doc. no. 22 at 13.) Similarly, BANA and Cenlar argue that Plaintiff fails to allege exactly how much money has been converted or attempt to itemize or calculate this figure. (Doc. no. 11 at 7.) Defendants are partially correct. Although "there can be no conversion action for money damages for money," there is an exception for the conversion of money if it compromises "a specific, separate, identifiable fund." Taylor v. Powertel, Inc., 250 Ga. App. 356, 359 (2001). Plaintiff alleges that Defendants converted specific checks, and the Georgia Supreme Court has held that "a specific check or negotiable instrument can be the subject of conversion," because it designates specific

---

[18] Currently, the issue of whether the Adversary Complaint constitutes a demand is inadequately briefed. If the issue is presented again after repleading, the Court expects better briefing by both parties. As a starting point, the parties should reference: Harpagon Co., LLC v. Freeman, 281 Ga. 531, 532 (2007); McDaniel v. White, 140 Ga. App. 118, 119 (1976); Stephens v. Millirons Garage, Inc., 109 Ga. App. 832, 833 (1964); King v. Loeb, 93 Ga. App. 301, 305 (1956); cf. SunTrust Bank v. Hightower, 291 Ga. App. 62, 67 (2008).

amounts of money for use for specific purposes.  Manhattan Constr.

Co. v. McArthur Elec., Inc., No. 1:06-CV-1512, 2007 WL 295535, at

*10-11 (N.D. Ga. Jan. 30, 2007) (citing Decatur Auto Ctr., Inc.

v.. Wachovia Bank, N.A., 276 Ga. 817, 819-20 (2003)).

Moreover, district courts in Georgia have found that

conversion claims were legally sufficient under Georgia law in

similar circumstances to this case.  See Blackburn v. BAC Home

Loans Servicing, LP, 914 F. Supp. 2d 1316, 1325-26 (M.D. Ga. 2012)

(denying mortgage lender's motion for summary judgment on

conversion claim where genuine issues of fact existed as to

lender's failure to properly credit payments); Johnson, 351 F.

Supp. 2d at 1372 (denying mortgage lender's motion to dismiss

conversion claim where plaintiff alleged lender failed to apply

payments to his account even after plaintiff made repeated demands

to have the funds applied).  Though these authorities appear to

support Plaintiff's conversion claims and rebut Defendants'

arguments, the Court cannot truly gauge the legal sufficiency of

the conversion claims until their factual predicates are more

clearly alleged.

CMI also argues that some of Plaintiff's conversion claims

are barred by the statute of limitations.[19]  (Doc. no. 22 at 11-

12.)  "Actions for the recovery of personal property, or for

damages for the conversion or destruction of the same, shall be

brought within four years after the right of action accrues."

[19] Plaintiff did not respond to this argument.  (See Doc. no. 23 at 14-15.)

O.C.G.A. § 9-3-32.   "As a general rule, a right of action for wrongful conversion accrues on the date of the conversion." Logan v. Tucker, 224 Ga. App. 404, 406 (1997); accord Therrell v. Georgia Marble Holdings Corp., 960 F.2d 1555, 1560 (11th Cir. 1992); see also Kornegay v. Thompson, 157 Ga. App. 558, 559 (1981) (Conversion "statute of limitation began to run from the date of demand and refusal."). At least some of the conversion claims are predicated on Defendants' conduct in 2003, 2004, and 2005, which is more than four years before the filing of the Complaint in March 2010. (See Compl. ¶¶ 148-53.) Unless Plaintiff's counsel can in good faith represent that these claims fall within the statute of limitations, see Fed. R. Civ. P. 11(b), then this conduct should not be alleged as conversion in the Amended Complaint.[20]

### E. RESPA

In the Complaint, Plaintiff fails to specify which provisions of RESPA have allegedly been violated.   Consequently, Plaintiff fails to give Defendants adequate notice of the claim as required by Federal Rule of Civil Procedure 8(a)(2).   The Complaint only alleges: "Debtor's loan is subject to the provisions of RESPA. Defendants' failure to remove unauthorized fees and expenses from debtor's account results in a RESPA violation and subjects defendants to damages under said act." (Compl. ¶¶ 175-76.)

---

[20] To the extent permitted by Federal Rule of Civil Procedure 15(c), the Amended Complaint will relate back to the date of the original Complaint.

Aside from being conclusory and failing to reference specific RESPA provisions, this allegation does not state a claim for a RESPA violation.   Under 12 U.S.C. § 2605(e), a loan servicer has certain duties to respond to a qualified written request ("QWR") from a borrower.   First, Plaintiff does not clearly allege which of his communications to Defendants constitutes a QWR.[21]   Second, in response to a QWR, a loan servicer may make appropriate corrections in the account, provide the borrower with a written explanation or clarification of the reasons the servicer believes the account is correct, "or" provide the borrower with the information requested by the borrower.   See 12 U.S.C. § 2605(e)(2)(A-C).   Because Plaintiff earlier alleges that Cenlar provided "detailed information regarding debtor's account," in response to a QWR (Compl. ¶ 135 & Ex. SSS), it appears that Cenlar complied with its duty to respond under RESPA.

In response to BANA and Cenlar's motion for judgment on the pleadings, Plaintiff argues that Defendants violated RESPA in numerous ways.   (See Doc. no. 10 at 12-13.)   Yet, none of those violations are actually alleged in the Complaint.   In response to CMI's motion for judgment on the pleadings, Plaintiff concedes

---

[21] Plaintiff alleges that he received a delinquency notice from ABN in February 2004.  (Compl. ¶ 36.)  He allegedly sent that notice back to ABN with a hand-written notation that he did not understand why the account was delinquent, did not want to lose his home, and "if there is anything else we can provide you with, please call or send letter."  (Id. ¶ 37, & Ex. R.)  Plaintiff further alleges that "[t]his letter was a [QWR] as defined by RESPA."  (Id. ¶ 38.)  Additionally, Plaintiff alleges that Cenlar responded to a very detailed QWR sent by Plaintiff's counsel in July 2007.  (See id. ¶ 135, & Ex. SSS.)  It remains unclear which QWR is the predicate of Plaintiff's RESPA claim.  If the RESPA claim is replead, this deficiency must be corrected.

that the RESPA violations are outside the applicable statute of limitations, 12 U.S.C. § 2614. (See Doc. no. 22 at 16; Doc. no. 23 at 14.) Yet, it is unclear whether Plaintiff is conceding that all of his RESPA claims are barred or just those against CMI. All of the above-referenced deficiencies and issues must be clarified through repleading.

### F. O.C.G.A. § 13-1-11

The Complaint alleges that "Defendants are attempting or have previously attempted to collect fees and expenses without complying O.C.G.A. 13-1-11 and/or the underlying contract." (Compl. ¶ 163.) The surrounding allegations provide no further explanation of this statutory claim. This allegation is vague and conclusory; it does not establish the factual basis for the claim or even identify which provision of the statute has allegedly been violated. On repleading, Plaintiff should plead the factual and legal predicates of this claim with greater specificity.[22]

### G. O.C.G.A. § 7-4-17

Under Georgia law, payments made upon debts "shall be applied first to the discharge of any interest due at the time, and the balance, if any, shall be applied to the reduction of the principal." O.C.G.A. § 7-4-17. Without any explicit reference to this statute, the Complaint alleges that "Defendants are in

---

[22] The Court recognizes that Plaintiff has attempted to provide more specificity in responding to the motions for judgment on the pleadings. But the Court declines to address any substantive legal issues raised by Plaintiffs and Defendants in the briefing until the claim is pleaded more thoroughly. The Court also notes that the legal issues raised deserve better briefing.

violation of Georgia law regarding the application of payments," and are "not properly applying said payments toward the payment of principal and interest." (Compl. ¶¶ 178-89.) By failing to even reference the statute, these allegations do not give Defendants sufficient notice of a claim under section 7-4-17. Moreover, despite Plaintiff's arguments to the contrary, there are no allegations in the Complaint that clearly or adequately explain how Defendants' application of payments was inconsistent with the statute. These deficiencies must be corrected through repleading.

### III. CONCLUSION

Based upon the foregoing, Defendants' motions for judgment on the pleadings (doc. nos. 5, 22) are **DENIED**. The Complaint and Answers are hereby **STRICKEN**. Plaintiff is **DIRECTED** to file an Amended Complaint in compliance with the above-referenced instructions and authorities within **twenty-one (21) days** of this Order. Once the Amended Complaint is filed, Defendants shall have **twenty-one (21) days** to plead or otherwise respond.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of December, 2013.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA